# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF FLORIDA

## PANAMA CITY DIVISION

|  |  |  |
|---|---|---|
| A.L., by P.L.B., and | ) | |
| P.L.B. for herself | ) | |
| Plaintiffs | ) | Case No. 5:13-cv-85-RS-GJ |
| **vs.** | ) | |
| | ) | SECOND AMENDED COMPLAINT[1] |
| | ) | AND |
| | ) | REQUEST FOR JURY TRIAL |
| Jackson County School Board | ) | |
| Defendants | ) | |

PRELIMINARY STATEMENT

This case is an appeal of the final order in Florida Division of Administrative Hearings

("DOAH") Case 10-10485E, and related claims under The Rehabilitation Act of 1973, 20 U.S.C.

790 et.seq. (herein "Section 504"); the Americans with Disabilities Act, 42 U.S.C. 12101,

---

[1]   Plaintiffs were unable to determine from the court's order which claims were dismissed: JCSB moved "...Plaintiffs' Complaint includes allegations and claims which occurred or arose both before November 24, 2008 and after November 24, 2010. Such claims were not exhausted in DOAH Case. No. 10-10485, and, accordingly, such claims must be dismissed as Plaintiffs have failed to exhaust their administrative remedies, as required." [Dkt. 10, Defendants Motion to Dismiss, p. 4]  The court granted the JCSB motion — apparently excluding claims outside that time frame.

Amendments to pleadings supercede the earlier pleading, which would pre-empt any further review of claims, if Plaintiffs filed an Amended Complaint without all the claims it has. The court's order granted leave to include all claims that are exhausted, and it is Plaintiffs' position that all claims in the complaint were raised at due process in DOAH 10-10485E, which is concluded by final ruling by the Administrative Law Judge.   Therefore, Plaintiffs have filed this Second Amended Complaint, in a format that separates Counts I-IV, which Plaintiffs believe the order did not dismiss, from Counts V-VI which Plaintiffs are unsure whether they are or are not dismissed because they are within the November 24, 2008-November 24, 2010 time frame, and those from Counts VII-X which Plaintiffs believe the court has dismissed for which the Court will issue a final Judgment.   Plaintiffs will file a separate Motion for Clarification which is incorporated herein by reference.

(herein "ADA"); and the Fourth Amendment to the United States Constitution, which were raised in that DOAH proceeding.   DOAH 10-10485E was served on November 24, 2010, amended March 15, 2011, and the final order was issued on December 27, 2012.


## PARTIES AND JURISDICTION

1. STUDENT is a twelfth grader attending Marianna High School who has resided in Jackson County, FL with MOTHER, and has attended JCSB schools at all times relevant in this matter.

2. JCSB has identified  STUDENT as a child with a disability under IDEA at all times relevant to this complaint.

3. STUDENT is, and has been at all times relevant to this complaint, an otherwise qualified individual under Section 504 and ADA, with substantial impairments in multiple major life activities.

4. JCSB is a "local educational agency" ("LEA")  under the IDEA, and is therefore responsible for providing STUDENT free appropriate public education ("FAPE").

5. JCSB is a recipient of federal funds under IDEA and other federal grant programs and is responsible for providing free appropriate public education under Section 504 ("FAPE 504").

6. JCSB is a covered entity under the Americans with Disabilities Act ("ADA").

7. JCSB is a government entity which is subject to the Fourth Amendment of the United States Constitution.

8.     The IDEA claims in this case were exhausted in DOAH 10-10485E, which was filed on November 24, 2010, amended March 15, 2011.   The DOAH final order was filed December 27, 2012.

9.     The Section 504, ADA and Fourth Amendment claims were exhausted in DOAH 10-10485E, which was filed November 24, 2010 and arose after August 15, 2007.

10.    Alternatively, it is futile to exhaust Section 504, ADA, and Fourth Amendment claims in an administrative due process because Florida Division of Administrative Hearings denies that it has jurisdiction to hear such claims under the IDEA, even though IDEA Section 1415(l) requires the claims be brought in an IDEA due process hearing.

11.    Jurisdiction is specifically conferred upon this Court by the IDEA, Section 1415(i)(2).  It is also proper as claims in it arise under federal law: Section 504, the Americans with Disabilities Act, and the Fourth Amendment of the United States Constitution.

12.    Venue is properly laid in the United States District Court of Florida, Northern District, Panama City Division, as authorized by 28 U.S.C. §1391 and 1392.

13.    IDEA's two year statute of limitations does not apply to the IDEA claims in this case because JCSB withheld information from the parent that was required under IDEA to be provided to Mother, in violation of 20 U.S.C. 1415(f)(3)(D)(ii), specifically the prior written notices in 2007-2010 that JCSB was required to provide under 20 U.S.C. 1415(b)(3) and (c)(1).

14.    IDEA's two year statute of limitations does not apply to the IDEA claims in this case because Mother was prevented from requesting a due process hearing in 2008 due to specific misrepresentations by JCSB that Mother's concerns about the aide's bullying

and/or harassment and/or demeaning action or words STUDENT were not issues that could be addressed under IDEA.

15.     The statute of limitations in Florida for Section 504/ADA claims is four years.

16.     The statute of limitations for violations of the Fourth Amendment is four years.


<u>FACTS</u>

17.     STUDENT was comprehensively evaluated at Morris Center in Gainesville at JCSB expense in 2003.   Evaluators of various professional expertise made the following recommendations:

    a.     Four hours/five days per week for a minimum of 9 weeks cognitive rehabilitation therapy to enhance phonological awareness and memory, higher order language, reading, spelling and writing and executive function, specifically Lindamood Bell.

    b.     Sensorimotor therapy one hour per day.

    c.     A regular classroom setting with specially trained aide who can seamlessly integrate special adaptive devices and accommodations in daily classwork and who avoids negative and demeaning commentary, who doesn't do the work or organizing for STUDENT but rather provides structure and cues so that STUDENT masters the sequence of actions necessary to record assignments in a book, organize materials for a homework task, and complete the task, and techniques for working on long-term multistage projects.

    d.     Language therapy.

    e.      Multiple choice testing format.

    f.      Occupational therapy because student experienced pain while writing and could not write legibly.

    g.      Physical therapy for gait and stamina.

    h.      A sensory diet.

    i.      That any projections be approached with caution because children like STUDENT can show improvement with appropriate interventions and do so most when such interventions occur early in life.

18.    These services and accommodations were required to meet STUDENT's needs as adequately as the needs of non-disabled students are met, and to provide him the opportunity to master the same general education standards that apply to all students.

19.    JCSB, its officials, employees and agents has not implement any of the professional recommendations with fidelity..

20.    STUDENT has:

    a.      At least average intelligence.

    b.      The ability to encode and store new material but has difficulty spontaneously retrieving the material on demand because of his Traumatic Brain Injury.

    c.      Difficulty with written expression, partly because of handwriting fatigue and upper body strength deficits, but also in the planning and writing content.

    d.      Language impairment.

    e.      Difficulty with planning and follow through, with assignments.   He has trouble staying on task and absorbing the material when there are noisy, boisterous or

threatening behaviors going on around him, and also when he doesn't understand the content or instructions.

f.     High levels of anxiety about fitting in at school and bullying and/or harassment and/or demeaning action or words (of which he has been a frequent target), and of being punished for manifestations of his disabilities.

g.     Other issues like speech, fine and gross motor skill deficits.

21.   STUDENT needs to become independently able to manage these affects of his disability.

22.   STUDENT's March 2009 auditory evaluation identified difficulty in language and phonemic synthesis.

23.   STUDENT has regularly attended JCSD schools at all times relevant to this complaint, except that:

a.     In Fall 2008, he missed several months because he was being bullied and/or harassed and/or demeaned at school by the paraprofessional assigned to him and JCSB did not stop it.   MOTHER removed STUDENT until December 15, 2008 when the principal advised her that the paraprofessional was no longer working for JCSB.

b.     In Fall 2010, he missed more school than normal due to pneumonia, dehydration, counseling visits because of repeated bullying and/or harassment and/or demeaning actions against STUDENT, and medical visits related to the above.

c.     After January 2011, STUDENT has missed school for ocular migraines which are caused by sensory environmental issues and stress, and other medical conditions caused by the stress at school.

24. MOTHER has spent an average of three hours daily during each school year, pre-teaching, post teaching, helping STUDENT to read and learn the material so he could successfully complete his homework and prepare for tests since 6th grade.

25. MOTHER arranged for and provided assistive technology for STUDENT, recommended software, and online services for STUDENT since 2006.

26. MOTHER gave ten day notice of her intent to seek and provide private services at JCSB expense.

27. STUDENT has not mastered Florida's grade level benchmarks or consistently displayed that mastery through objective testing, reading, writing, math, science or history, at any grade level.

   a. STUDENT remains below passing levels on the FCAT reading and math.

   b. STUDENT read at a 816 Lexile in June 2010 (SAT 10).

   c. JCSB informed MOTHER that ninth grade texts are written at around 1260 Lexile.

   d. STUDENT took the Comprehensive SAT 10 in June 2010 (rising ninth grade). His scores ranged from 2.2 Grade Equivalent (Prewriting), 2.8 GE Social Studies, 3.6 GE (Science); to 6.7 GE Reading Vocabulary, 8.1 GE (math problem solving), 11.4 GE (Editing); with the rest in between.

   e. STUDENT's has not yet passed the Tenth Grade FCAT that he is required to pass to graduate with a regular diploma.

   f. STUDENT has taken the ACT test twice, but has not received a satisfactory concordant score for the FCAT.

g.      STUDENT took the college readiness test, and did not pass it.

h.      With 36 hours of research based instruction provided by MOTHER privately using Failure Free Reading program, FASTT Math, and Brain Builder, and Earobics for **ESY in Summer 2009**, using Sylvan pre-post testing, STUDENT made:

i.       1.9 grade level growth in Math Concepts and Application (5.7),  1.3 growth in Computation (5.5), and  1.4 (5.6) in Total Mathematics.

ii.      2.2 grade level growth in Reading Comprehension (3.7) and a 1.7 growth in Total Reading (4.4).

28.   JCSB did not from 2007 to present:

a.      Provide STUDENT the special education, related services and accommodations he needs in order to master the same general education standards that apply to all JCSB students.

b.      Meet STUDENT's needs as adequately as the needs of non-disabled students are met.

29.   STUDENT has been required to take Intensive Reading course each year from sixth grade to present.

30.   MOTHER has asked for research proven interventions each year.

31.   JCSB did not provide the interventions recommended by those professionals who have evaluated STUDENT — Earobics and Lindamood Bell.

32.    JCSB and its officials, staff and agents did not provide with fidelity any peer reviewed research proven reading interventions to STUDENT in these classes or otherwise.

33.    STUDENT was required to use Accelerated Reading for 2006-2010, even though there is no data showing it has addressed or improved his reading comprehension.

34.    STUDENT was not provided any of the books in an audio format, despite requests therefore until 8th grade, and was not provided access to books in audio format regularly and independently thereafter through 2010.

35.    Since August 2010, STUDENT's teachers did not provide accommodations in STUDENT's IEP, or the accommodations STUDENT needed to have his needs met as adequately as the needs of non-disabled students are met.

36.    JCSB did not  assure that teachers provided STUDENT the IEP accommodations.

37.    MOTHER notified JCSB that failure to provide the accommodations STUDENT needs is discriminatory.

38.     JCSB and its officials, staff and agents have failed to provide with fidelity any peer reviewed research proven math interventions to STUDENT in any class.

39.    MOTHER made at least the following written notices to various JCSB officials, employees and agents requesting that they stop the bullying and/or harassment and/or demeaning action or words that STUDENT was subjected to because of his disabilities over the last several years:

a.    MOTHER notified John Ellerbee, Principal of Riverside Elementary School where STUDENT attended, on February 20, 2007 about a serious of bullying, demeaning words, and discriminatory actions against STUDENT.

b.    MOTHER notified JCSB in March 2008 about bullying/demeaning words in the after school program.

c.      MOTHER notified JCSB in September  2008 that a teacher was verbally abusing
        STUDENT.

d.      MOTHER notified JCSB in May 2009 that three boys had bullied/demeaned
        STUDENT.

e.      MOTHER notified JCSB in March 2010 that students were making fun of
        STUDENT because the principal refused to allow STUDENT to attend an
        Accelerated Reading reward field trip.

f.      MOTHER notified JCSB's individual members on January 30, 2010 about 2
        years of bullying/demeaning.

g.      MOTHER notified JCSB March 20, 2010 referencing May 13, 2009, September
        17, 2009, and January 28, 2010 bullying/demeaning incidents.

h.      MOTHER notified JCSB February 2010 about ongoing bullying/demeaning.

i.      MOTHER notified JCSB in September 2010, that STUDENT had been
        bullied/demeaned and his homework taken from him during PE class at MHS.

j.      MOTHER first learned about STUDENT being stabbed with a pencil by another
        STUDENT in or around April 2010, when STUDENT reported in October 2010
        to his doctor that the lead still hurt in his hand.   (STUDENT reported stabbing to
        MMS Nurse at the MMS clinic at the time it happened.  He asked to call
        MOTHER and was refused.)  MOTHER immediately reported the incident to
        JCSB.

k.      MOTHER notified JCSB during Fall 2010 about bullying/demeaning by a coach
        in the basketball program.

l.      MOTHER notified the teacher about bullying/demeaning in STUDENT's Biology
class on November 8 and 10, 2010.

m.      MOTHER notified JCSB  about a student who had been involved in other
incidents, who had refused to allow STUDENT to sit at his lunch table, in
December, 2010.

n.      MOTHER NOTIFIED JCSB about bullying and/or harassment and/or demeaning
action or words and shaming related to needing Doctor-prescribed Mt. Dew for
migraines on February 22, 2011.

o.      MOTHER has notified JCSB staff of additional incidents of  bullying and/or
harassment and/or demeaning action or words because of STUDENT's
disabilities since 2010.

40.    None of the incidents listed in the paragraph above was investigated in a serious way,
nor were actions taken to change other student's and school staff understanding and
acceptance of STUDENT's disabilities, or actions to permanently change the school
culture so that bullying and/or harassment and/or demeaning action or words was not
accepted and did not continue.

41.    The following services and accommodations have been recommended by teachers and
evaluators who have evaluated STUDENT, but not been included in any Individual
Education Program (herein "IEP"), nor implemented, despite MOTHER's requests:

a.      1:1 Tutoring

b.      Teacher preteaching concepts and vocabulary each day prior to the lesson and
advanced weekly lesson plan outlines sent home for review over the weekend.

c.      1:1 Lindamood Bell Interventions (which have a strong visual component).

d.      Assistive Technology training and use.

e.      Laptop use from school to home, smart phone apps

f.      Voice activated recording device to translate words to written format

g.      IPAD to take notes with and use alarm functions.

h.      MP3 player with earphones to listen to classical music to block out auditory distractions while he works or reads in class.

i.      In each new setting, specific routines developed and taught, with fading of support and cuing over time.

j.      Transition plan with specific instruction in organizational, self-pacing and research skills in preparation for his college courses, money management, nutrition, shopping and meal planning beyond what is normally offered in high school classes.

k.      QEEG guided neurofccdback (90901)

l.      Cognitive Rehabilitation (97777)

m.      Brief rapid paced multisensory lessons in discrete segments preferably on the computer.

n.      Stimulating and engaging, multi-sensory approach to reading, spelling and writing instruction.

o.      1:1 daily research proven interventions in organizational and planning skills.

p.      Most demanding attentional classes earlier in the day.

q.      Auditory trainer to help student focus on speaker.

r.      Research proven interventions

42.   Earobics was recommended in 2003 by Assistive Tech, and Morris Center, in 2009 by

University of Florida Audiologist Dana Ulmer, Au-D, CCC-A.   Earobics was included

in STUDENT's IEP of June 2009, but it was never provided by JCSB after they learned

that their version was for elementary school students.   MOTHER provided the age

appropriate  Earobics to STUDENT in ESY 2009.

43.   STUDENT's IEP since June 2010 has included Watchminder2, to help him stay on task.

STUDENT has not been able to use it,.  JCSB did not allow him to use it at home.  JCSB

did not propose any other assistive technology to address the issue, when it couldn't get

that technology to work, even though practicing stay on task while he does his homework

is important to increasing his time on task.

44.   JCSB did not provide any other assistive technology to address issues with memory.

45.   The following has been recommended by JCSB evaluators, but not implemented:

a.      "To increase interest and motivation, the teacher may touch his shoulder and

stand near him when giving directions. If at all possible, [STUDENT] should be

seated near the teacher in the front, away from as many distractions as possible,

and he should be contacted every five minutes. To increase his interest level, the

teacher should continue to show an interest in him individually and ask his

opinion on different subjects. Rewarding displays of interest may also increase

motivation. [STUDENT] does take a very long time to complete his work, and the

teacher may cross off completed tasks from a list on his desk so that he is able to

manage his time independently. Other ways to improve time management may be

to incorporate breaks between work periods and allowing extra time for completion of tasks. As stated in the previous evaluation, every effort should be made to decrease the necessity of an individual aid[sic]. It is very important for the aide to train [STUDENT] in organizing his day to day academic work and provide structuring cues so that {STUDENT] is able to master recording assignments in a book and completing tasks."   2010 JCSB Evaluation

b.     "Close monitoring of [STUDENT} should enable the teacher and his parents to offer external cuing and increase structure if necessary. [STUDENT] also appears to continue to have difficulty with attention and focus at times.... Complaints of headaches may also be a consideration....  every effort should be made to decrease the necessity of an individual aide. If an aide is necessary it is very important for the aide to train [STUDENT] in organizing his day-to-day academic work and provide structure and cues so that [STUDENT] is able to master recording assignments in a book and completing tasks. ....  It is important that the school continue providing an annual review of [STUDENT]'s strengths and weaknesses to redefine his educational goals and strategies. ... Every effort should be made by the school and home to increase [STUDENT]'s level of independence, enhance his self-concept, and increase interpersonal and social skills."  2007 JCSB evaluation

46.     JCSB withheld information from MOTHER that it was required to IDEA to provide: (1) opportunity to inspect and review educational records (34 C.F.R. 300.501), and before IEP meetings (34 CFR 300.613(a)); and (2) prior written notices as required by and

meeting the standards of  34 C.F.R. 300.503 for all requests made by the parent, and all

changes made by JCSB from 2007-present, except that in November 2010 MOTHER

received a letter from JCSB that partially meets the statutory standard about the last IEP

developed without parental participation.  This denied FAPE because it denied MOTHER

full participation in IEP decisions and the information about what STUDENT's needs

and rights were.

47.     JCSB denied STUDENT during school years 2007-2008 through 2010 specially

designed instruction to allow him to master the state standards that apply to all,

participate in extracurricular activities,  and successfully transition to the post-secondary

outcome of his choice.


### COUNT I — IDEA PROCEDURAL VIOLATIONS 2008-2010

48.     All previous and later allegations, as necessary to support this cause of action, are

incorporated into this cause of action by reference as if set forth in full.

49.     JCSB violated IDEA procedurally from November 24, 2008 through November 24,

2010, in the following ways:

   a.     JCSB held an IEP meeting November 17, 2010  without MOTHER, whose doctor

          excused her because of illness, and who notified JCSB of that illness and asked

          that the meeting be rescheduled so she could attend.

   b.     JCSB failed to provide all the educational records MOTHER had requested

          pursuant to 34 C.F.R. 300.613 (a) before the November 17, 2010 IEP meeting,

          and other meetings in 2009.

c.      JCSB failed to allow Mother to be an equal participant in IEP meetings by refusing to allow her to observe placements JCSB placed or proposed to place STUDENT in.

d.      JCSB held a meeting September 11, 2010 to discuss STUDENT's education at MHS and did not schedule it at a mutually agreeable time and did not invite parent to attend it.

e.      JCSB assigned STUDENT to a more restrictive environment (the alternative school) for ESY services in Summer 2009 without any attempt to provide services in the Least Restrictive Environment with supplementary aids and services.

f.      JCSB did not develop an IEP that included a "statement of measurable annual goal[s], including academic and functional goals, designed to– (aa) meet the child's needs that result from the child's disability to enable the child to be involved in and make progress in the general education curriculum; and (bb) meet each of the child's other educational needs that result from the child's disability; measurable goals in all areas in which STUDENT needed special education and related services".

g.      JCSB repeated the same goals from year to year.

h.      JCSB did not collect or provide to MOTHER any objective data showing STUDENT ever mastered the goals it set.

i.      JCSB did not make ESY Summers 2009 and 2010 decisions early enough for MOTHER to effectively challenge them before ESY was scheduled to start.

j.      JCSB has not developed since November 2008 an IEP for STUDENT that

        included "a statement of the special education and related services and

        supplementary aids and services, based on peer-reviewed research to the extent

        practicable, to be provided to the child, or on behalf of the child, and a statement

        of the program modifications or supports for school personnel that will be

        provided for the child (aa) to advance appropriately toward attaining the annual

        goals; (bb) to be involved in and make progress in the general education

        curriculum in accordance with subclause (I) and to participate in extracurricular

        and other nonacademic activities; and (cc) to be educated and participate with

        other children with disabilities and nondisabled [sic] children in the activities," in

        violation of 20 U.S.C. 1414 (d)(1)(A)(I)(IV).

k.      JCSB has not developed an IEP for STUDENT which include the provision of

        sufficient and appropriate services and accommodations to close the academic

        achievement gap so STUDENT could advance appropriately toward attaining

        annual goals, to master Florida Sunshine Standards that apply to all, to participate

        in extracurricular and other nonacademic activities.

l.      JCSB did not provide the appropriate goals and services so that STUDENT was

        prepared to successfully participate in extracurricular activities pursuant to 34

        CFR 300.107, 117, specifically yearbook in 8th grade (2008-2009), band in 2009-

        2010, and 2010; and basketball, 2008-2009, 2009-2010, 2010.

m.      JCSB did not individualize the IEP for STUDENT.

n.     JCSB did not implement the IEP services and accommodations that it developed,
       with fidelity.

o.     JCSB did not approve the Independent Educational Evaluation MOTHER
       requested in 2009, nor did it file for due process without unreasonable delay to
       defend its own evaluation and lawfully enacted Independent Educational
       Evaluation ("IEE") conditions, which is required to do under IDEA.

p.     JCSB did not provide prior written notice (herein "PWN") that conforms to the
       statutory requirements of  IDEA for the many MOTHER requests it denied,
       except that MOTHER was given a PWN  which did not fully comply with the
       requirements of IDEA for the November 17, 2010 IEP meeting,.

q.     JCSB predetermined the goals and services for ESY 2009.

r.     JCSB predetermined the services to be provided ESY 2010.

s.     JCSB predetermined the IEP goals and services for the meeting held in June
       2010.

t.     JCSB did not allow the accommodation of a laptop at school, books on tape at
       school or Livescribe Smartpen.

u.     JCSB predetermined the IEP goals and services for the meeting held in May
       2009.

v.     JCSB did not consider parent IEP proposals for Summer 2009, Summer 2010, the
       6/7/2010 IEP nor the 11/17/2010 IEP.

w.     JCSB predetermined  IEP changes for the November 17, 2010 IEP meeting,
       refusing to  disclose those changes to MOTHER in advance of the meeting,

intentionally misleading MOTHER by claiming they had not done so even though they had already hired the aide.

x.      JCSB refused to allow MOTHER to record her meetings and conversations with JCSB staff and agents beginning in Fall 2010, which denied MOTHER and student's father and step-father full and equal participation.

y.      JCSB developed IEPs that do not clearly identify the amount of services STUDENT is supposed to receive.

50.     These IDEA procedural violations denied STUDENT free appropriate public education because they denied MOTHER the information to be a full participant, and the opportunity to be a full participant in developing the IEP, and they denied STUDENT the effective and sufficient services so he could master the same general education standards that apply to all students.

51.     Plaintiffs requests the court order:

a.      JCSB to permanently correct each of these procedural violations.

b.      JCSB provide compensatory education on an hour to hour basis for two years for 960 hours per year, plus 240 for extended year services, to be paid at the rate of $50/hour, and used at the parent's sole discretion, before or after school including for assistive technology.  Award additional six hours per day after filing this complaint on March 26, 2013 until the violations denying free appropriate public education are corrected.  These services will be in addition to any services that STUDENT is entitled to receive FAPE going forward.

c.      JCSB to reimburse Mother for the private evaluation she received from Dr. Voeller in 2011.

d.      JCSB to reimburse Mother for the average three hours per night Mother spent in pre and post teaching Student because of JCSB's denial of FAPE, from November 24, 2008 to the date FAPE is implemented upon court order, at a rate of $10/hour.

e.      JCSB reimburse Mother for all costs of private services she has provided for Student November 2008 to present.

f.      Order JCSB to allow MOTHER to record IEP meetings, and to arrange meeting times and locations that are convenient for all STUDENT's parents who want to attend.

g.      Order JCSB to develop an IEP that provides STUDENT with FAPE, and places STUDENT at WINSI or another equally appropriate private school with specialized experience educating students with Traumatic Brain Injury with which MOTHER agrees, as the placement required for FAPE going forward.

h.      Order JCSB to allow STUDENT to use the Livescribe Pen at student's discretion, and the IPAD with apps that will assist him in reading his texts and hearing them audibly at the same time, writing, math, science and other digital multisensorial content, and executive skills of planning, remembering and finishing his assignments and turning them in on time, at school and at home.

i.      That Mother for AL and for herself is the prevailing party and JCSB pay her attorney fees and costs.

j.      Such other relief as the court deems appropriate.

## COUNT II - IDEA SUBSTANTIVE VIOLATIONS 2008-2010

52.    All previous allegations, as necessary to support this cause of action, are incorporated into this cause of action by reference as if set forth in full.

53.    JCSB violated IDEA substantively, which violations denied STUDENT free appropriate public education (herein FAPE) under IDEA, as follows:

   a.    JCSB has substantively denied FAPE to STUDENT in the procedural violations in paragraphs above.

   b.    JCSB in the November 17, 2010 meeting which was held in Mother's absence, JCSB they developed an IEP that assigned STUDENT to a more restrictive environment inappropriately.

   c.    JCSB did not  include in any IEP and/or provide services and accommodations with fidelity that were recommended by professionals to meet STUDENT's individualized needs from November 2008 to November 2010.

   d.    The November 17, 2010 IEP was drafted without a lawfully constituted IEP team because it excluded MOTHER who was too sick to attend and requested rescheduling so she could attend.

   e.    The November 17, 2010 IEP denies FAPE by assigning STUDENT to a Learning Strategies class which was not the least restrictive environment and which was not appropriate for him.

f.  The "Learning Strategies" class to which JCSB planned to assign STUDENT did not provide any peer reviewed strategy instruction with fidelity in 2010-2011 to present school years.

g.  JCSB did not provide any IEP services to prevent the repeated bullying and/or demeaning harassment that STUDENT has been subjected to from November 2008 -November 2010.

h.  JCSB did not provide the IEP services STUDENT needed to be able to participate in extracurricular activities.

i.  JCSB assigned STUDENT to "Basic" classes with dumbed down expectations for the regular curriculum, without MOTHER's knowledge or consent 2008-2010.

j.  JCSB assigned STUDENT aide(s) who instead of teaching STUDENT strategies and use of assistive technology for independence, made him more dependent and isolated him from friends, from 2008 to 2010.

k.  JCSB proposed an IEP in November  2010, that assigned him to an aide, without having provided the services and accommodations required by his then current IEP.

l.  JCSB did not protect STUDENT from the bullying and/or harassment and or demeaning actions of staff and/or peers because of his disabilities and/or advocacy.

m.  JCSB did not reassign student from the Biology class in 2010  to another biology class the same time frame which MOTHER requested, the principal promised, and STUDENT's doctors recommended, after STUDENT experienced bullying and/or

harassment and/or demeaning actions in that class, even though STUDENT could no longer feel safe there.

n.  JCSB did not provide STUDENT with effective, peer reviewed researched based interventions, with fidelity from November 2008– November 2010.

o.  JCSB assigned STUDENT year after year to Intensive Reading classes that did not and were not planned to address his individual needs to learn to read at grade level.

p.  JCSB has not provided even the accommodations that it agreed to in IEPs from 2008 to present.

q.  JCSB did not include e accommodations that STUDENT needs in IEPs or provide them in classes.

r.  JCSB assigned STUDENT to the Alternative School for ESY for the Summer of 2009 which was not the least restrictive environment.

s.  JCSB predetermined and offered ESY 2009 services that were not appropriate for STUDENT, and subjected him to daily physical body searches.      STUDENT stopped attending because of the unwanted searches.

t.  JCSB did not consider parent IEP proposals for Summer 2009, Summer 2010, the 6/7/2010 IEP nor the 11/17/2010 IEP, or incorporate parent requested goals or services in the IEPs.

u.  JCSB refused to provide after or before extended year services even though this refusal prevented STUDENT from benefitting from the regular instruction that students who are not disabled receive.

v.     JCSB failed to provide transition planning and services so that STUDENT could

successfully transition to his post secondary outcome of choice which is college, in

sports broadcasting or video production November 2008 to November 2010.

w.     JCSB denied MOTHER and STUDENT's father and stepfather status as full and

equal participants in the IEP process by failing to agree to mutually acceptable

times and by refusing to allow MOTHER to record meetings in 2010 and

thereafter.

x.     JCSB denied MOTHER an IEE without filing for due process.

54.    MOTHER and STUDENT requests the court to grant the remedies above in paragraph 51

against JCSB.


### COUNT III — RETALIATION AGAINST MOTHER AND STUDENT UNDER IDEA 2008-2010

55.    All previous allegations, as necessary to support this cause of action, are incorporated into

this cause of action by reference as if set forth in full.

56.    JCSB was aware that MOTHER and STUDENT were engaged in protected activities

under IDEA, and retaliated against MOTHER and STUDENT because of that.

57.    JCSB  retaliated against MOTHER and/or STUDENT for engaging in protected activities

as follows:

a.     Against MOTHER by defaming MOTHER to teachers by falsely telling them she

had sued teachers when she made the FLDOE complaint in 2009 and telling them

to be careful about dealing with her.

b.     Against MOTHER and/or STUDENT by requiring an IEP meeting prior to changing his Biology class assignment.

c.     Against MOTHER and /or STUDENT by telling staff not to allow MOTHER to record meetings with them, and by staff refusing to allow MOTHER to record meetings in 2010.

d.     Against MOTHER and STUDENT by instructing school staff not to respond to MOTHER's questions.

e.     Against MOTHER by requiring personal meetings as a condition of resolving issues that staff had previously been willing to do without meetings.

f.     Against MOTHER by the principal threatening never to talk to her again if she made a complaint about the principal.

g.     Against MOTHER and STUDENT by refusing to allow MOTHER to observe the Learning Strategies class to which the school wished to assign STUDENT.

h.     Against MOTHER and STUDENT for complaining about Coach WILLIAMS bullying and/or harassment and/or demeaning action or words about STUDENT during weight training, by refusing to grant STUDENT reasonable accommodations for his disability in try-outs, and by cutting STUDENT from the MHS JV basketball team in October 2010.

i.     Against STUDENT by refusing to allow him to use his IPAD and Livescribe Pen that were recommended to accommodate STUDENT to do what he needed done.

j.     Against MOTHER and STUDENT by the principal refusing to talk with MOTHER about ongoing education matters concerning STUDENT because

MOTHER named her as a party in the administrative due process to exhaust the claims.

58.    MOTHER gave notice to JCSB about the retaliation, on at least the following occasions:

a.    The superintendent and principal on 8/17/2010 by email, on denial of field trips, denial of audio books.

b.    The principal 10/7/2010 by email, about denial of accommodations and educational records.

c.    The superintendent and staff 11/2/2010, about being denied reasonable accommodations to play basketball, bullying, retaliation.

d.    The superintendent and staff 11/8/2010 11/10/2010 by email, about  and/or harassment and/or demeaning action or words and retaliation.

e.    Assistant MHS principal Mr. Suggs, 11/23/2010 by email about retaliatory refusal to allow recording.

f.    Superintendent and staff on January 7, 2011, by email, about changing class schedule unilaterally, removing STUDENT from core curriculum for OT/ST, and retaliation.

59.    JCSB caused MOTHER and STUDENT emotional distress, economic and non-economic damages, educational injury and loss because of JCSB's retaliation.

60.    PLAINTIFFS request the court order:

a.    JCSB to cease and desist its retaliation against them.

b.    The remedies above in paragraph 51 against JCSB.

c.    Any other remedy that the court finds to be appropriate.

COUNT IV —FOURTH AMENDMENT CLAIM – 2009

61.    All previous allegations, as necessary to support this cause of action, are incorporated into

       this cause of action by reference as if set forth in full.

62.    STUDENT was assigned by JCSB to the Jackson County School District's Alternative

       School, where JCSB physically search his body and possessions daily as a condition of

       receiving extended year services for the summer 2009, in violation of the Fourth

       Amendment.

63.    It was the only place extended year services were provided.

64.    The decision to provide extended year services was made by elected Superintendent Lee

       Miller and/or Assistant Superintendent Frank Moore, who are policy makers.

65.    JCSB had no reason to believe STUDENT had anything inappropriate on his person, or

       that he was a danger to himself or others or any other reasonable reason to search him.

66.    The mandatory search was an unreasonable, in violation of the Fourth Amendment.

67.    JCSB's unreasonable and unlawful search caused STUDENT emotional harm, loss of

       educational opportunity when he didn't want to attend, and pain and suffering damages.

68.    PLAINTIFFS seek a jury trial on this claim.

69.    PLAINTIFFS request the court order:

       a.    JCSB cease and desist conducting body searches and searches of STUDENT's

             possessions without a individualized reasonable suspicion that he is then in

             possession of something that violates the student code of conduct.

       b.    JCSB pay damages determined by a jury.

    c.      JCSB find Mother for herself and for STUDENT to be prevailing party and JCSB to pay her attorney fees and costs, and expert fees.

    d.      Such other relief as the court determines appropriate.

### COUNT V — RETALIATION UNDER SECTION 504/ADA 2008-2010

70.    All previous allegations, as necessary to support this cause of action, are incorporated into this cause of action by reference as if set forth in full.

71.    Plaintiffs brought these claims at IDEA due process amended complaint DOAH 10-10485E on March 15, 2011.  On motion by JCSB, the ALJ dismissed on the basis that DOAH does not have jurisdiction to hear them.

72.    JCSB excluded MOTHER and/or STUDENT from participation in, and/or denied the benefits of, its services, programs, or activities, and subjected them to retaliation from 2008-2010.

73.    JCSB was aware that MOTHER and STUDENT were engaged in protected activities under 504 and/or ADA and retaliated against MOTHER and STUDENT because of that.

74.    JCSB  retaliated against MOTHER and/or STUDENT for engaging in protected activities as follows:

    a.      Against MOTHER and/or STUDENT by refusing to provide educational records without charging for their collection, in violation of FERPA.

    b.      Against MOTHER by refusing to allow her to scan the educational and public records, to eliminate the need for JCSB to provide copies and her to pay for them.

c.    Against MOTHER and/or STUDENT by requiring an IEP meeting prior to changing his Biology class assignment.

d.    Against MOTHER and /STUDENT by telling staff not to allow MOTHER to record meetings with them, and by staff refusing to allow MOTHER to record meetings

e.    Against MOTHER and STUDENT by instructing school staff not to respond in writing to MOTHER's questions.

f.    Against MOTHER by requiring personal meetings as a condition of resolving issues that staff had previously been willing to do without meetings.

g.    Against MOTHER by the principal threatening never to talk to her again if she made a complaint about the principal.

h.    Against MOTHER and STUDENT by refusing to allow MOTHER to observe the Learning Strategies class to which the school wished to assign STUDENT.

i.    Against STUDENT by prohibiting him from enrolling in the Engineering and Design Academy.

j.    Against MOTHER and STUDENT for complaining about Coach WILLIAMS bullying and/or harassment and/or demeaning action or words about STUDENT during weight training, by refusing to grant STUDENT reasonable accommodations for his disability in try-outs, and by cutting STUDENT from the MHS JV basketball team in October 2010.

k.    Against STUDENT by refusing to allow him to use his IPAD and Livescribe Pen that were recommended to accommodate STUDENT to do what he needed done.

l.     Against MOTHER and STUDENT by the principal refusing to talk with MOTHER about ongoing education matters concerning STUDENT because MOTHER named her as a party in the administrative due process to exhaust the claims.

75.   MOTHER gave notice to JCSB about the retaliation, on at least the following occasions:

a.     The superintendent and principal on 8/17/2010 by email, on denial of field trips, denial of audio books.

b.     The principal 10/7/2010 by email, about denial of accommodations and educational records.

c.     The superintendent and staff 11/2/2010, about being denied reasonable accommodations to play basketball, bullying, retaliation.

d.     The superintendent and staff 11/8/2010 11/10/2010 by email, about  and/or harassment and/or demeaning action or words and retaliation.

e.     Assistant MHS principal Mr. Suggs, 11/23/2010 by email about retaliatory refusal to allow recording.

f.     Superintendent and staff on January 7, 2011, by email, about changing class schedule unilaterally, removing STUDENT from core curriculum for OT/ST, and retaliation.

76.   JCSB caused MOTHER and STUDENT emotional distress, economic and non-economic damages, educational injury and loss because of JCSB's retaliation.

77.   PLAINTIFFS request a jury trial for claims under Section 504/ADA.

78.   PLAINTIFFS request the court order:

a.      JCSB to cease and desist its retaliation against them.

b.      The remedies above in paragraph 51 against JCSB.

c.      JCSB to pay damages in an amount established by the jury for economic and non-economic injury, loss of educational opportunity, loss of employment opportunity, cost of providing the private services provided because of JCSB's retaliation under Section 504/ADA.

d.      JCSB to pay attorney fees, costs to PLAINTIFFS; and expert fees to PLAINTIFFS for Section 504/ADA claims.

e.      Any other remedy that the court finds to be appropriate

COUNT VI — DISCRIMINATION UNDER 504/ADA 2008-2010

79.    All previous allegations, as necessary to support this cause of action, are incorporated into this cause of action by reference as if set forth in full.

80.    Plaintiffs brought these claims at IDEA due process amended complaint DOAH 10-10485E on March 15, 2011.   On motion by JCSB, the ALJ dismissed on the basis that DOAH does not have jurisdiction to hear them.

81.    JCSB intentionally and/or with deliberate indifference excluded STUDENT from participation in, or denied the benefits of, or subjected her to discrimination under any program or activity because of his disabilities from November 24, 2008 through November 24, 2010.

82.    JCSB intentionally and/or with deliberate indifference denied STUDENT free appropriate public education because of his disabilities by not meeting his needs as adequately as the

needs of nondisabled students are met, in violation of 34 C.F.R. 104.33 from November 24, 2008 to November 24, 2010.

83.  JCSB intentionally and/or with deliberate indifference denied STUDENT the benefit of it programs and activities because of his disabilities by denying him accommodations and assistive technology that he needed to meet his needs as adequately as the needs of nondisabled students are met November 24, 2008 to November 24, 2010. .

84.  JCSB intentionally and/or with deliberate indifference discriminated against STUDENT because of his disabilities by assigning him to a more restrictive placement in November 2010 without having  "demonstrated ...that the education of the person in the regular environment with the use of supplementary aids and services cannot be achieved satisfactorily,", in violation of 34 C.F.R. 104.34.

85.  JCSB intentionally and/or with deliberate indifference denied STUDENT the benefit of it programs and activities because of his disabilities not providing him the accommodations that were included in his IEP, including but not limited to Earobics, WatchMinder 2, and Books on Tape November 24, 2008 to November 24, 2010.

86.  JCSB intentionally and/or with deliberate indifference discriminated against STUDENT because of his disabilities by not individualizing the manner of his instruction as recommended by evaluators, and by not extending the school day to provide him the support he needed to learn the curriculum, and by not providing effective research proven extended year services from November 24, 2008 to November 24, 2010.

87.  JCSB intentionally and/or with deliberate indifference denied STUDENT the benefit of its programs and activities because of his disabilities by not thoroughly and timely investigating reports of bullying and/or harassment and/or demeaning conduct and taking

appropriate and effective action to assure school staff and STUDENT's peers did not

continue the offensive behaviors November 24, 2008 to November 24, 2010.

88.    JCSB intentionally and/or with deliberate indifference denied STUDENT the benefit of its

programs and activities because of his disabilities by not allowing him to use his own

IPAD independently, his Livescribe Pen independently and as he needed it, and IPAD

apps to help with planning and organizing in ninth grade.

89.    JCSB intentionally and/or with deliberate indifference denied STUDENT the benefit of its

programs and activities because of his disabilities by assigning him to BASIC classes in

which he was not taught the regular curriculum that students who were not assigned to

"Basic" classes were given from November 24, 2008 through November 24, 2010.

90.    JCSB intentionally and/or with deliberate indifference denied STUDENT the benefit of it

programs and activities because of his disabilities by not allowing student to participate in,

and/or have reasonable accommodations to be in yearbook in 8th grade (2009-2010),

middle school basketball 8th grade (2009-2010)  and band in 7th grade (2008-2009), the

Engineering and Technology Academy,  9th grade JV Basketball try outs and/or weight

training.

91.    JCSB intentionally and/or with deliberate indifference denied STUDENT the benefit of its

programs and activities when the principal told STUDENT in writing he was eligible for

services under an AIP offered to other struggling students in September 2009, but then

refused to provide it because STUDENT is disabled.

92.    JCSB intentionally and/or with deliberate indifference denied STUDENT the benefit of its

programs and activities and discriminated against him because of his disabilities by

penalizing STUDENT for conduct that is a manifestation of his disability and because he

had to attend doctors appointments by not letting him take field trips or have other privileges; by assigning STUDENTS to classes that higher proportions of students with disabilities assigned; and by refusing to allow STUDENT to take the electives he wanted to take because JCSB wanted to assign him to the same class as another student with a disability who needed an aide from November 24, 2008 through November 24, 2010.

93.    MOTHER notified JCSB and its various officials, employees and/or agents of discrimination  against her and STUDENT on at least the following occasions:

a.    The dates identified in paragraph 39 above.

b.    The principal, 8/18/2009 by email, denial of band

c.    The principal, superintendent and JCSB 9/9/2009 by email denial of band

d.    The principal on 10/30/2009 on denial of field trips, by email.

e.    The principal 1/20/2010 by email, denial of field trips and FAPE

f.    The superintendent and principal 1/30/2010 by email, bullying and/or harassment and/or demeaning action or words is discrimination

g.    The superintendent, assistant superintendent and principal  3/2/2010 by email, bullying and/or harassment and/or demeaning action or words is discrimination

h.    The superintendent and principal on 8/17/2010 by email, on denial of field trips, denial of audio books.

i.    The principal 9/20/2010, by email on denial of accommodation of doctors' recommendation.

j.    The principal 10/7/2010 by email, about denial of accommodations and educational records.

k.   The principal 10/12/2010 by email, about denial of field trip and denying reasonable accommodation of not penalizing for tardies when doing what dr. ordered.

l.   The superintendent and staff 11/2/2010, about being denied reasonable accommodations to play basketball, bullying,.

m.   The superintendent and staff 11/8/2010 11/10/2010 by email, about  and/or harassment and/or demeaning action or words.

n.   Superintendent and staff on January 7, 2011, by email, about changing class schedule unilaterally, removing STUDENT from core curriculum for OT/ST.

94.   Because JCSB knew or should have known about the discrimination, and did not investigate and stop it, it intentionally discriminated and/or were deliberately indifferent.

95.   STUDENT suffered educational injury, emotional distress, loss of educational opportunity, economic and non-economic damages because of JCSB's discrimination.

96.   STUDENT requests a jury trial.

97.   STUDENT requests the court order:

a.   JCSB to cease and desist its discrimination against STUDENT

b.   The remedies requested in Paragraph 78 above against JCSB.

c.   JCSB to reimburse Mother for six hours per day from September to December 2008 she provided Student educational services because JCSB did not prevent the Student from being bullied, at a rate of $10/hour.

d.   JCSB reimburse Mother for all costs of private services she has provided for Student 2008 to present.

e.      JCSB to pay damages in an amount established by the jury for economic and non-economic injury, loss of educational opportunity, loss of employment opportunity, cost of providing the private services provided because of JCSB's discrimination, and all other losses caused by its discrimination.

f.      JCSB to pay attorney fees, costs, and expert fees to STUDENT.

g.      Any other remedy that the court finds to be appropriate.

## COUNT VII— FOURTH AMENDMENT- 2008

98.    All previous allegations, as necessary to support this cause of action, are incorporated into this cause of action by reference as if set forth in full.

99.    STUDENT was assigned by JCSB to the Jackson County School District's Alternative School, where JCSB physically search his body and possessions daily as a condition of receiving extended year services for the summer 2008, in violation of the Fourth Amendment.

100.   It was the only place extended year services were provided.

101.   The decision to provide extended year services was made by elected Superintendent Lee Miller and/or Assistant Superintendent Frank Moore.

102.   JCSB had no reason to believe STUDENT had anything inappropriate on his person, or that he was a danger to himself or others or any other reasonable reason to search him.

103.   The mandatory search was an unreasonable, in violation of the Fourth Amendment.

104.   JCSB's unreasonable and unlawful search caused STUDENT emotional harm, loss of educational opportunity, and pain and suffering damages.

105.   PLAINTIFFS seek a jury trial on this claim.

106.    PLAINTIFFS request the court order:

    a.     JCSB cease and desist conducting body searches and searches of STUDENT's possessions without a individualized reasonable suspicion that he is then in possession of something that violates the student code of conduct.

    b.     JCSB pay damages determined by a jury.

    c.     JCSB find Mother for herself and for STUDENT to be prevailing party and JCSB to pay her attorney fees and costs, and expert fees.

    d.     Such other relief as the court determines appropriate.


### COUNT VIII  DISCRIMINATION UNDER 504/ADA 2006-2008

107.    All previous allegations, as necessary to support this cause of action, are incorporated into this cause of action by reference as if set forth in full.

108.     Plaintiffs brought these claims at IDEA due process amended complaint DOAH 10-10485E on March 15, 2011.   On motion by JCSB, the ALJ dismissed on the basis that DOAH does not have jurisdiction to hear them.

109.    JCSB intentionally and/or with deliberate indifference excluded STUDENT from participation in, or denied the benefits of, or subjected her to discrimination under any program or activity because of his disabilities from November 24, 2006 through November 24, 2008.

110.    JCSB intentionally and/or with deliberate indifference denied STUDENT free appropriate public education because of his disabilities by not meeting his needs as adequately as the needs of nondisabled students are met, in violation of 34 C.F.R. 104.33 from November 24, 2006 through November 24, 2008.

111.    JCSB intentionally and/or with deliberate indifference denied STUDENT the benefit of it programs and activities because of his disabilities by denying him accommodations and assistive technology that he needed to meet his needs as adequately as the needs of nondisabled students are met from November 24, 2006 through November 24, 2008.  .

112.    JCSB intentionally and/or with deliberate indifference discriminated against STUDENT because of his disabilities by not individualizing the manner of his instruction as recommended by evaluators, and by not extending the school day to provide him the support he needed to learn the curriculum, and by not providing effective research proven extended year services from November 24, 2006 through November 24, 2008.

113.    JCSB intentionally and/or with deliberate indifference denied STUDENT the benefit of its programs and activities because of his disabilities by not thoroughly and timely investigating reports of bullying and/or harassment and/or demeaning conduct and taking appropriate and effective action to assure school staff and STUDENT's peers did not continue the offensive behaviors from November 24, 2006 through November 24, 2008.

114.    JCSB intentionally and/or with deliberate indifference denied STUDENT the benefit of its programs and activities because of his disabilities by assigning him to BASIC classes in which he was not taught the regular curriculum that students who were not assigned to "Basic" classes were given from November 24, 2006 through November 24, 2008.

115.    JCSB intentionally and/or with deliberate indifference denied STUDENT the benefit of it programs and activities because of his disabilities by not allowing student to participate in, and/or have reasonable accommodations to be in middle school basketball and band in 6th and 7th grades.

116.   JCSB intentionally and/or with deliberate indifference denied STUDENT the benefit of its programs and activities because of his disabilities by failing to screen and train an aide as adequately as those who work with students without disabilities are screened and trained, and when the aide demeaned and bullied STUDENT, refused to hold her accountable or protect STUDENT from September 2008 to the end of the semester.

117.   JCSB intentionally and/or with deliberate indifference denied STUDENT the benefit of its programs and activities and discriminated against him because of his disabilities by penalizing STUDENT for conduct that is a manifestation of his disability and because he had to attend doctors appointments by not letting him take field trips or have other privileges; by assigning STUDENTS to classes that higher proportions of students with disabilities assigned; and by refusing to allow STUDENT to take the electives he wanted to take because JCSB wanted to assign him to the same class as another student with a disability who needed an aide.

118.   Because JCSB knew or should have known about the discriminatory acts, and did not investigate and stop them, it intentionally discriminated and/or were deliberately indifferent.  JCSB received notices identified in Paragraph 39 above.

119.   STUDENT suffered educational injury, emotional distress, loss of educational opportunity, economic and non-economic damages because of JCSB's discrimination.

120.   STUDENT requests a jury trial.

121.   STUDENT requests the court order:

    a.    JCSB to cease and desist its discrimination against STUDENT

    b.    JCSB ordered to pay compensatory education on an hour to hour basis for two years for 960 hours per year, plus 240 for extended year services, to be paid at the

rate of $50/hour, and used at the parent's sole discretion, before or after school including for assistive technology.  These services will be in addition to any services that STUDENT is entitled to receive FAPE going forward.

c.      Order JCSB to pay MOTHER for three hours per school day at $10 per hour for two years she provided after school services for STUDENT.

d.      Order JCSB to reimburse MOTHER for costs of providing ESY services Summer 2007 and 2008.

e.      JCSB to pay damages in an amount established by the jury for economic and non-economic injury, loss of educational opportunity, loss of employment opportunity, cost of providing the private services provided because of JCSB's discrimination, and all other losses caused by its discrimination.

f.      JCSB to pay attorney fees, costs, expert fee costs to STUDENT.

g.      Any other remedy that the court finds to be appropriate.


COUNT IX---  RETALIATION UNDER 504/ADA 2006-2008

122.    All previous allegations, as necessary to support this cause of action, are incorporated into this cause of action by reference as if set forth in full.

123.    Plaintiffs brought these claims at IDEA due process amended complaint DOAH 10-10485E on March 15, 201l.   On motion by JCSB, the ALJ dismissed on the basis that DOAH does not have jurisdiction.

124.     JCSB excluded MOTHER and/or STUDENT from participation in, and/or denied the benefits of, its services, programs, or activities, and subjected them to retaliation from 2006-2008.

125.   JCSB was aware that MOTHER and STUDENT were engaged in protected activities under 504 and/or ADA and retaliated against MOTHER and STUDENT because of that.

126.   JCSB  retaliated against MOTHER and/or STUDENT for engaging in protected activities as follows:

a.   Against STUDENT by not allowing him to attend WINGS in Summer of 2008 after MOTHER complained about the bullying and/or harassment and/or demeaning action or words STUDENT had experienced in the program.

b.   Against MOTHER for engaging in protected activity of making complaints about the violations of IDEA and/or Section 504/ADA  by preventing MOTHER from coming to the classroom to assure STUDENT would be safe when the aide was demeaning him in Fall 2008.

127.   JCSB caused MOTHER and STUDENT emotional distress, economic and non-economic damages, educational injury and loss because of JCSB's retaliation.

128.   PLAINTIFFS request a jury trial for claims under Section 504/ADA.

129.   PLAINTIFFS request the court order:

a.   Granting the remedies identified in Paragraph 121 above.

b.   Any other remedy that the court finds to be appropriate

COUNT X  — IDEA PROCEDURALLY THAT DENIED FAPE, AND IDEA
SUBSTANTIVELY  2006-2008

130.   All previous allegations, as necessary to support this cause of action, are incorporated into this cause of action by reference as if set forth in full.

131.   Plaintiffs brought these claims at IDEA due process amended complaint DOAH 10-10485E on March 15, 201l.  On motion by JCSB and without any factfinding or

testimony on whether IDEA's statute of limitations exemptions applied and over Plaintiffs

objection, the ALJ dismissed on the basis that IDEA's statute of limitations precluded

claims earlier than the regular two year limitation period.

132.   JCSB violated IDEA procedurally in the following ways:

a.   JCSB assigned STUDENT to a more restrictive environment (the alternative

school) for ESY services in Summer 2008 without any attempt to provide services

in the Least Restrictive Environment with supplementary aids and services.

b.   JCSB did not develop an IEP that included "statement of measurable annual

goal[s], including academic and functional goals, designed to– (aa) meet the

child's needs that result from the child's disability to enable the child to be

involved in and make progress in the general education curriculum; and (bb) meet

each of the child's other educational needs that result from the child's disability;

measurable goals in all areas in which STUDENT needed special education and

related services"  from 2007 to November 24, 2008

c.   JCSB repeated the same goals from year to year from November 24, 2006 through

November 24, 2008.

d.   JCSB did not collect or provide to MOTHER any objective data showing

STUDENT ever mastered the goals it set November 24, 2006 through November

24, 2008. .

e.   JCSB did not make ESY Summer 2007 or 2008 decisions early enough for

MOTHER to effectively challenge them before ESY was scheduled to start.

f.   JCSB did not developed from 2007 through November 24, 2008 an IEP for

STUDENT that included "a statement of the special education and related services

and supplementary aids and services, based on peer-reviewed research to the

extent practicable, to be provided to the child, or on behalf of the child, and a

statement of the program modifications or supports for school personnel that will

be provided for the child (aa) to advance appropriately toward attaining the annual

goals; (bb) to be involved in and make progress in the general education

curriculum in accordance with subclause (I) and to participate in extracurricular

and other nonacademic activities; and (cc) to be educated and participate with

other children with disabilities and nondisabled [sic] children in the activities,"  in

violation of 20 U.S.C. 1414 (d)(1)(A)(I)(IV).

g.    JCSB has not developed an IEP for STUDENT which include the provision of

provide sufficient and appropriate services and accommodations to close the

academic achievement gap so STUDENT could advance appropriately toward

attaining annual goals, to master Florida Sunshine Standards that apply to all, to

participate in extracurricular and other nonacademic activities, from 2007-

November 24, 2008.

h.    JCSB did not provide the appropriate goals and services so that STUDENT was

prepared to successfully participate in extracurricular activities pursuant to 34 CFR

300.107, 117, specifically band in 6th and 7th grades, and basketball, from 2007 to

November 24, 2008.

i.    JCSB did not individualize the IEP for STUDENT, 2007 to November 24, 2008.

j.    JCSB did not implement the IEP services and accommodations that it developed,

with fidelity, 2007 to November 24, 2008.

k.     JCSB did not provide prior written notice (herein "PWN") that conforms to the statutory requirements of IDEA for the many MOTHER requests it denied from 2007 - November 24, 2008.

l.     JCSB predetermined the goals and services for ESY 2008.

m.    JCSB developed IEPs from 2007 to November 24, 2010 that do not clearly identify the amount of services STUDENT is supposed to receive.

133.   These IDEA procedural violations denied STUDENT free appropriate public education.

134.    JCSB violated IDEA substantively, which violations denied STUDENT free appropriate public education (herein FAPE) under IDEA from November 24, 2006 through November 24, 2008, as follows:

a.     JCSB has substantively denied FAPE to STUDENT in the procedural violations in paragraphs above.

b.     JCSB did not  include in any IEP and/or to provide services and accommodations with fidelity that were recommended by professionals to meet STUDENT's individualized needs.

c.     JCSB did not provide any IEP services to prevent the repeated bullying and/or demeaning harassment that STUDENT has been subjected to from 2007 to present.

d.     JCSB did not provide the IEP services STUDENT needed to be able to participate in extracurricular activities.

e.     JCSB assigned STUDENT to "Basic" classes with dumbed down expectations for the regular curriculum, without MOTHER's knowledge or consent.

f.   JCSB assigned , and/or insisting on assigning STUDENT aide(s) who instead of teaching STUDENT strategies and use of assistive technology for independence, made him more dependent and isolated him from friends.

g.   JCSB assigned STUDENT to an aide who bullied and/or demeaned him from August 2008, and did not remove the aide, such that MOTHER had to remove STUDENT from school from September to December 2008.

h.   JCSB did not protect STUDENT from the bullying and/or harassment and or demeaning actions of staff and/or peers because of his disabilities and/or advocacy.

i.   JCSB did not provide STUDENT with effective, peer reviewed researched based interventions, with fidelity.

j.   JCSB assigned STUDENT year after year to Intensive Reading classes that did not and were not planned to address his individual needs to learn to read at grade level.

k.   JCSB has not provided even the accommodations that it agreed to in IEPs.

l.   JCSB did not include e accommodations that STUDENT needs in IEPs or provide them in classes.

m.   JCSB assigned STUDENT to the Alternative School for ESY for the Summers of 2008, which was not the least restrictive environment.

n.   JCSB predetermined and offered ESY 2008 services that were not appropriate for STUDENT, and subjected him to daily physical body searches.

o.   JCSB refused to provide after or before extended year services even though this refusal prevented STUDENT from receiving and/or benefitting from the regular instruction that students who are not disabled receive.

135.   Plaintiffs requests the court order:

a.  JCSB to permanently correct each of these violations.

b.  JCSB provide compensatory education on an hour to hour basis for two years 960 hours per year, plus 240 for extended year services, to be paid at the rate of $50/hour, and used at the parent's sole discretion, before or after school including for assistive technology.  These services will be in addition to any services that STUDENT is entitled to receive FAPE going forward.

c.  JCSB to reimburse Mother for the average three hours per night Mother spent in pre and post teaching Student because of JCSB's denial of FAPE, from August 15, 2007 through November 24, 2008, at a rate of $10/hour.

d.  JCSB to reimburse Mother for six hours per day from September to December 2008 she provided Student educational services because JCSB did not prevent the Student from being bullied, at a rate of $10/hour.

e.  JCSB reimburse Mother for all costs of private services she has provided for Student November 24, 2006 through November 24, 2008.

f.  JCSB to place Student at WINSI or another equally appropriate private school as the placement that provides FAPE going forward.

g.  That Mother for AL and for herself is the prevailing party and JCSB pay her attorney fees and costs.

h.  Such other relief as the court deems appropriate.

Respectfully Submitted the 10th day of October 2013.

CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document has been filed electronically and furnished thereby by Notice of Electronic Filing the above date to Matthew Fuqua, Bondurant and Fuqua, 4450 Lafayette Street, Marianna, FL, mfuqua@embarqmail.com., and Bob L.Harris, Messer, Caparello & Self, PO Box 15579, Tallahassee FL 32317, bharris@lawfla.com.


/s/Rosemary N. Palmer
Rosemary N. Palmer
FBN 070904
5260 Pimlico Drive
Tallahassee FL  32309
floridalawlady@gmail.com
850 668 9203
ATTORNEY FOR PLAINTIFFS