UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

A.L. and P.L.B.

    Plaintiffs,

vs.                                                                  CASE NO.: 5:13-cv-00085-RS-GRS

JACKSON COUNTY SCHOOL BOARD,

    Defendants.

_____/

### DEFENDANT'S RESPONSE TO "PLAINTIFFS' MOTION FOR PARTIAL JUDGMENT ON THE ADMINISTRATIVE RECORD PLUS, AND MEMORANDUM OF LAW (PARTIALLY DISPOSITIVE)"

Defendant JACKSON COUNTY SCHOOL BOARD ("Defendant" or "School Board") hereby Responds to "Plaintiffs' Motion for Partial Judgment on the Administrative Record Plus, and Memorandum of Law (Partially Dispositive)" ("Motion for Partial Judgment").

### I.    General

As the moving party, Plaintiffs bear the burden of showing that they are entitled to judgment on the claims identified in their Motion for Partial Judgment. Plaintiffs have, however, entirely failed to meet that burden as their Motion and Statement of Undisputed Material Facts is incomplete and entirely fails to establish that they are entitled to judgment as a matter of law. In particular, Plaintiffs' Statement of Undisputed Material Facts fails to contain any citations to the Record.[1] (Doc. 116-1.) In addition, Plaintiffs appear to attempt to rely on a "Motion to

---

[1] Moreover, the few places where Plaintiffs did include citations (albeit directly to the DOAH Final Hearing transcript and exhibits and not to the record), such text and citations appear to be copied and pasted from Defendant's Proposed Final Order filed at DOAH. (Doc. 116-1, ¶14, 16-18; R. at 13170, ¶57; R. at 13190-91, ¶158-60.)

1

Supplement the Record"[2] which has not been filed as of the date of the filing of this Response. *Id*. Plaintiffs have, accordingly, failed to file a Motion for Partial Judgment worthy of consideration by this Court and such Motion should summarily be denied. Defendant will, nonetheless, address the issues raised in Plaintiffs' Motion for Partial Judgment.

## II.     November 17, 2010 IEP Meeting

In their Motion for Partial Judgment, Plaintiffs claim that Defendant wrongfully held A.L.'s November 17, 2010 IEP meeting without P.L.B. present. In support of this assertion, Plaintiffs cite only to one non-binding case decided by the Ninth Circuit, which Plaintiffs claim is "identical to the facts in this case." The *Doug C. v Hawaii Dep't of Educ*. case to which Plaintiffs cite, however, does not support their theories nor is based on a factual scenario which is "identical to the facts of this case."

First, in the *Doug C*. case, the IEP meeting at issue was simply an annual IEP meeting. There is no indication that the child at issue, Spencer C., was struggling or that there was a more urgent need for an immediate IEP meeting. In this matter, however, the record evidence clearly demonstrates that Defendant was attempting to schedule the November 17, 2010 IEP meeting because A.L. was struggling, missing large amounts of school, and very strongly and urgently needed an intervention. (Doc. 112-1, ¶20.) The *Doug C*. case is entirely devoid of such urgent circumstances. In addition, in *Doug C*., the IEP meeting which was held without the parent's presence also lacked the attendance of other necessary participants, particularly the only IEP team member who was on the staff at Spencer C.'s current placement. Here, all necessary participants, other than P.L.B., were in attendance. Moreover, unlike the *Doug C*. case, in this case P.L.B., prior to the scheduled meeting, provided a Parent Proposed IEP which outlined, in

---

[2] Defendant opposes any attempt by Plaintiffs to supplement the record in this matter. In the event Plaintiffs do file such a Motion, Defendant intends to file a substantive response addressing such opposition at the appropriate time.

2

depth, P.L.B.'s requests and desires goals for the new IEP. (Doc. 112-1, ¶20.) The record evidence clearly shows that the IEP team considered the Parent Proposed IEP at the November 17, 2010 IEP meeting and even implemented some of its suggestions. (Doc. 112-1, ¶20.)

Additionally, the IEP meeting in the *Doug C.* case was rescheduled a total of four times, all of which occurred in less than a month. The Department of Education in *Doug C.* also declined to reschedule the meeting a fifth time due to not wanting to disrupt the other IEP team member's schedules, thus prioritizing its representative's schedules over that of the parent. In this case, Defendant's attempts to schedule and hold a meeting with P.L.B. spanned four months. (Doc. 112-1, ¶20.) During all of that time, A.L. was struggling, having declining grades, and increasing attendance issues. (Doc. 112-1, ¶20.) The sole reason Defendant refused to reschedule the November 17th IEP meeting a fifth time was the urgent and immediate need to address A.L.'s failing grades and attendance issues. (Doc. 112-1, ¶20.) This is vastly different from the factual scenario presented in *Doug C*.

As the foregoing evidences, on November 17th, Defendant was faced with the situation of either attempting to accommodate P.L.B.'s continuing demands for rescheduling or providing A.L. with the appropriate interventions necessary to provide FAPE. As the Ninth Circuit in *Doug C.* recognized, "the purposes of the IDEA [are] to provide disabled students a free appropriate public education and to protect the educational rights of those students" and "[w]hen confronted with the situation of complying with one procedural requirement of the IDEA or another… the agency must make a reasonable determination of which course of action promotes the purposes of the IDEA and is least likely to result in the denial of a FAPE." In this case, Defendant made the reasonable determination that continuing to attempt to accommodate P.L.B. would result in the denial of FAPE to A.L. and that proceeding with the meeting in her absence more fully

promoted the purposes of the IDEA. The *Doug C*. court also indisputably recognized that "there may, of course, be circumstances in which accommodating a parent's schedule would do more harm to the student's interest than proceeding without the parent's presences at the IEP." There can be no dispute that this was clearly a situation in which continuing to accommodate P.L.B.'s schedule would harm A.L. more than proceeding in P.L.B.'s absence would.

Most importantly, however, the record evidence demonstrates that in scheduling and holding the November 17th IEP meeting, Defendant fully complied with all requirements of the IDEA and its implementing regulations, including 34 C.F.R. § 300.322, which provision provides in pertinent part:

> (c) Other methods to ensure parent participation. If neither parent can attend an IEP Team meeting, the public agency must use other methods to ensure parent participation, including individual or conference telephone calls, consistent with § 300.328 (related to alternative means of meeting participation).
> (d) Conducting an IEP Team meeting without a parent in attendance. A meeting may be conducted without a parent in attendance if the public agency is unable to convince the parents that they should attend. In this case, the public agency must keep a record of its attempts to arrange a mutually agreed on time and place, such as—
> (1) Detailed records of telephone calls made or attempted and the results of those calls;
> (2) Copies of correspondence sent to the parents and any responses received; and
> (3) Detailed records of visits made to the parent's home or place of employment and the results of those visits.

Here, when Defendant was unable to convince P.L.B. to attend any of the scheduled IEP meetings, it offered P.L.B. the opportunity to participate in the meeting by telephone. (Doc. 112-1, ¶20.) Despite having participated in previous meetings by telephone, P.L.B. declined. (Doc. 112-1, ¶20.) As established by the record evidence, Defendant also kept a record of its telephone calls, correspondence, and other attempts to contact P.L.B. to arrange a mutually agreed on time

and place throughout August to November, 2010. (Doc. 112-1, ¶20.) As a result of the foregoing, Plaintiffs are not entitled to judgment on their claims that Defendant wrongfully held the November 17th IEP meeting despite P.L.B.'s absence.

Moreover, this exact issue was considered by the Administrative Law Judge and decided in Defendant's favor. (R. at 13436-37, ¶304-06; 13495, ¶397; 13496-505, ¶399-422.) Accordingly, Defendant respectfully requests that the Administrative Law Judge's decision be upheld and that judgment for Defendant be entered on such claims, as requested in Defendant's Amended Motion for Summary Judgment. (Doc. 112.)

### III. Independent Educational Evaluation

In their Motion for Partial Judgment, Plaintiffs claim that they are entitled to judgment in their favor regarding their request for an Independent Educational Evaluation ("IEE") in 2009. Plaintiffs' claims, however, are not supported by the law or the facts in this matter.

P.L.B. first requested an IEE on Friday, May 1, 2009. (R. at 1289, 12652:18-12653:8.) Defendant promptly responded to P.L.B. and provided her with the necessary paperwork which consisted of a "Parental Request for an IEE/Independent Educational Evaluation" form, as well as a list of approved evaluators. (R. at 1281-83, 12650:5-12652:9.) The IEE form utilized by Defendant included a section requesting that the parent:

> Please identify the evaluator you have chosen to conduct the independent evaluation. If you do not select someone from the JCSB's approved list, please identify your chosen examiner and describe the qualifications of the selected examiner, the location of the evaluation, and the estimated cost of the evaluation and where the evaluator can be reached by the JCSB.

(R. at 1283.) Defendant did not immediately return the paperwork, prompting Defendant to inquire as to the status of the paperwork on May 22, 2009. (R. at 6753.) Subsequently, on May 23, 2009, P.L.B. returned an uncompleted version of the IEE paperwork. (R. at 1296; 12653:9-

5

15.) In particular, P.L.B. wrote "undetermined at this time" in the evaluator selection section referenced above. (R. at 1296.) Upon receipt of the incomplete paperwork, Defendant returned the paperwork to P.L.B. with a notation that the IEE process could not move forward until she completed the paperwork. (R. at 1296.) P.L.B. subsequently acknowledged the incomplete status of the paperwork and indicated that she was still in the process of attempting to select an evaluator. (R. at 6755.) P.L.B. later forwarded correspondence to Defendant wherein it was suggested that the approved list of examiners did not contain a person capable of conducting the necessary evaluation but suggested that a Dr. Michael Passler located in Dothan Alabama was capable. (R. at 6755-58, 12655:16-12656:7.) Dr. Passler exceeded both the geographic and monetary limitations of Defendant's criteria. (R. at 6760.) Nonetheless, Defendant made contact with Dr. Passler, determined he could provide an adequate evaluation, and ultimately added him to the list of approved evaluators. (R. at 1331-35, 6766, 6772, 6777, 12657:11-13, 12658:9-12660:4.)

P.L.B. nonetheless still refused to select an evaluator from the approved list and, despite the fact that Defendant had already altered its geographic and monetary criteria, requested "Morris Center," an evaluator who was not on the approved list and who vastly exceeded even the expanded geographic and monetary criteria. (R. at 6761, 6772, 12653:15-12654:2.) Even in this request, however, P.L.B. did not properly fill out the form and provide Defendant with the qualifications of the selected examiner, the location of the evaluation, and the estimated cost of the evaluation, and where the evaluator could be reached by Defendant, as required. (R. at 6766.) As a result, Defendant again returned the form to P.L.B. and asked her to supply the required information or to select an evaluator from the list. (R. at 6766, 6772.) In one such correspondence, Defendant specifically requested that P.L.B. "[p]lease complete the form

appropriately including the required information on the Morris Center. Again, we want to work toward getting this done as quickly as possible." (R. at 6766.) P.L.B. never submitted the completed paperwork to Defendant. (R. at 6772.) In July, 2009, Mr. Larkin asked to meet with P.L.B. to resolve the issue. (R. at 2773-74, 6771.) P.L.B. complained about the meeting and then requesting meeting times and dates only when the office was closed. (R. at 2773-74.)

P.L.B. subsequently filed a complaint with the Florida Department of Education alleging that Defendant had violated the IDEA with regard to the IEE process. (R. at 2264-82.) The Florida Department of Education found no merit to P.L.B.'s complaint. (R. at 2275-81.) Subsequently, P.L.B. made an appointment with Dr. Passler and Defendant made arrangements for the payment of such evaluation. (R. at 6778-79, 6781; 12661:15-12662:13.) During the same time period, citing to the Health Insurance Portability and Accountability Act (HIPAA) as the basis for her request, P.L.B. insisted she would only go through with the IEE if Dr. Passler gave his report to her and not to Defendant. (R. at 1363-64, 6786.) Defendant, in an effort to meet P.L.B.'s concerns over whether Defendant should receive a copy of the report directly from Dr. Passler and in an effort to facilitate the evaluation, agreed that Dr. Passler should only give the report to P.L.B. and advised Dr. Passler of its position. However, on January 18th, before the evaluation could begin, P.L.B. refused to sign a release of information so that Dr. Passler could interview or receive information from JCSB staff who had worked with A.L. in the classroom. (R. at 1363-64, 6786.) P.L.B. again cited HIPAA as the reason for her refusal. (R. at 1363-64, 6786.)

Ultimately, P.L.B. never followed through with the IEE allegedly due to her concerns that Dr. Passler intended to share the results of the IEE with Defendant and/or interview school staff. (R. at 1363-64, 6789.) Notably, P.L.B. also threatened to file a professional practice

7

complaint against Dr. Passler if he did not change his consent and release forms to accommodate her concerns. (R. at 1363-64.) Dr. Passler did not relent to P.L.B.'s threats and instead advised the parent that he would only conduct the IEE in accordance with established procedures. (R. at 1363-64.) Based on the parent's refusal to consent, the IEE was not conducted. (R. at 6789.)

Pursuant to 34 CFR § 300.502, pertaining to IEEs, an agency may establish the criteria under which an IEE is obtained, including the location of the evaluation, the qualifications of the examiner, and the monetary limits of the evaluation. 34 CFR § 300.502(b). As the United States Department of Education, Office of Special Education and Rehabilitative Services ("OSEP") has stated, "[i]t is not inconsistent with IDEA for a district to publish a list of the names and addresses of evaluators that meet agency criteria, including reasonable cost criteria." *OSEP Letter to Parker* (Feb. 20, 2004). Additionally, when presented with a request for an IEE, an agency must ensure that an independent educational evaluation is provided at public expense or file a due process complaint to request a hearing to show that its evaluation is appropriate. 34 CFR § 300.502(e). As the facts outlined above demonstrate, Defendant has fully complied with these provisions. First, Defendant established criteria under which the IEE could be conducted, including a list of approved evaluators. Subsequently, upon receipt of the request for an IEE, Defendant took all steps possible to ensure that the IEE was provided at public expense, including modifying its own permissible criteria. The record evidence makes clear that the sole reason the IEE never occurred was due to P.L.B.'s misplaced reliance on HIPAA and objection to the evaluator's consent forms. Plaintiffs have provided absolutely no authority to support the proposition that a parent can intentionally sabotage a School Board's provision of an IEE, yet simultaneously blame the School Board for the failure of such IEE to occur.

Rather, Plaintiffs appear to claim that Defendant was obligated to either consent when Mother demanded that the evaluation occur at the Morris Center or file for due process. This claim is entirely without legal merit as Plaintiffs' argument is unsupported by the IDEA regulations or other guidance. 34 CFR § 300.502(b) provides in pertinent part:

> (b) Parent right to evaluation at public expense.
> …
> (2) If a parent requests an independent educational evaluation at public expense, the public agency must, without unnecessary delay, either--
> (i) File a due process complaint to request a hearing to show that its evaluation is appropriate; or
> (ii) Ensure that an independent educational evaluation is provided at public expense, unless the agency demonstrates in a hearing pursuant to §§ 300.507 through 300.513 that the evaluation obtained by the parent did not meet agency criteria.

Thus, the plain language of this provision makes clear that an agency is only obligated to file for due process when (a) it outright denies the request for an IEE and thus does not ensure that an IEE is provided at public expense or (b) when a parent actually obtains an evaluation which did not meet agency criteria, but demands reimbursement regardless. This position is supported by OSEP's *Letter to Parker*, which states that:

> Therefore, if a parent elects to obtain an IEE by an evaluator not on the public agency's list of evaluators, the public agency <u>may</u> initiate a due process hearing to demonstrate that the evaluation <u>obtained</u> by the parent did not meet the public agency criteria applicable for IEEs or there is no justification for selecting an evaluator that does not meet agency criteria. If the public agency chooses not to initiate a due process hearing, it must ensure that the parent is <u>reimbursed</u> for the evaluation.

(Feb. 20, 2004) (emphasis added); *see OSEP Letter to Petska* (Sept. 10, 2001) ("The public agency must, without unnecessary delay, initiate a hearing to demonstrate that the evaluation <u>obtained</u> by the parent did not meet the agency's cost criteria")(emphasis added). OSEP thus

9

clearly confirms that the due process requirement is triggered only where the School Board outright denies an IEE or where the parent actually obtains and seeks reimbursement for an IEE which exceeded the agency's criteria. Neither situation covered by 34 CFR § 300.502(b) is present here, however, since Defendant ensured that an appropriate independent educational evaluation was provided at public expense. Moreover, P.L.B. never actually obtained an evaluation which did not meet agency criteria, for which she sought reimbursement. Rather, Defendant altered its criteria to accommodate P.L.B. and arranged payment for the IEE, only to have P.L.B. ultimately refuse to have the IEE conducted. The factual scenario present here does not trigger either of the due process filing requirements contained within 34 CFR § 300.502(b).

Plaintiffs cite to several OSEP[3] letters in support of their allegations pertaining to the IEE. Plaintiffs' reliance on these materials is misplaced as they do not support Plaintiffs' allegations. Plaintiffs first cite to OSEP's *Letter to Parker* and claim that it is "a policy letter clarifying that parents have the right to choose their own independent evaluator." What OSEP's *Letter to Parker* actually says, however, is that:

> It is not inconsistent with IDEA for a district to publish a list of the names and addresses of evaluators that meet agency criteria, including reasonable cost criteria.  This can be an effective way for agencies to inform parents of how and where they may obtain an IEE.  In order to ensure the parent's right to an independent evaluation, it is the parent, not the district, who has the right to choose which evaluator <u>on the list</u> will conduct the IEE.  We recognize that it is difficult, particularly in a big district, to establish a list that includes every qualified evaluator who meets the agency's criteria.  <u>Therefore, when enforcing IEE criteria, the district must allow parents the opportunity to select an evaluator</u>

---

[3] Defendant notes that Plaintiffs assertion that OSEP's "interpretation of the statute must be followed unless obviously contrary to law" misstates the applicable standard. Rather, the IDEA itself provides that "[a]ny written response by the Secretary … regarding a policy, question, or interpretation … shall include an explanation in the written response that-- such response is provided as informal guidance and is not legally binding…" 20 U.S.C. § 1406.

> who is not on the list but who meets the criteria set by the public agency.

(emphasis added). As evidenced by the foregoing passage, *Letter to Parker* simply states that the parent has the right to choose an evaluator from the School Board's list and that the School Board must allow a parent to select an evaluator not on the list if they meet the School Board's criteria. Here, Defendant allowed P.L.B. to select any evaluator from their list. P.L.B. nonetheless demanded an evaluator who was not on the list and who also did not meet Defendant's criteria. Letter to Parker, accordingly, is not applicable to the factual scenario present in this case. Moreover, *Letter to Parker* continues on to say that:

> In addition, when enforcing IEE criteria, the district must allow parents the opportunity to demonstrate that unique circumstances justify the selection of an evaluator that does not meet agency criteria. In some instances, the only person qualified to conduct the type of evaluation needed by the child may be an evaluator who does not meet agency criteria… In such situations, the public agency must ensure that the parent still has the right to the IEE at public expense and is informed about where the evaluation(s) may be obtained.

In this instance, Defendant clearly gave P.L.B. the opportunity to demonstrate that none of the evaluators on its original list were acceptable. When P.L.B. presented information which appeared to possibly support that scenario, Defendant amended its criteria to include Dr. Passler, who both Dr. Passler and other evaluators agreed could conduct the evaluation desired by P.L.B. Thus, Defendant, by adding Dr. Passler, complied with *Letter to Parker* by allowing P.L.B. to make such demonstration, altering its criteria to include Dr. Passler to ensure that she still had the right to the IEE at public expense, and informing P.L.B. that such IEE could be obtained from Dr. Passler. Moreover, *Letter to Parker* clearly states that "the public agency must… inform[ ] [the parent] about where the evaluation(s) may be obtained." It thus clearly does not

11

support Plaintiff's proposition that the parent can unilaterally tell the agency where the evaluation will be performed.

Plaintiffs next allege that Defendant did not timely act upon P.L.B.'s request for an IEE. Neither the facts nor the law support this claim. First, the guidance cited by Plaintiffs does not support their claim as all such authorities either cite to inapplicable standards of other states or simply state that Defendant must act "without undue delay." Additionally, the record evidence makes clear that from the time of P.L.B.'s request, Defendant acted promptly and expediently and that the parties engaged in near-continuous communication throughout the entire process. In fact, in an effort to expedite the IEE, Defendant even prompted P.L.B. for responses and information and reminded her that they wanted to have the IEE done "as quickly as possible." Thus, in this regard, the record evidence makes clear that Defendant certainly did not act with "undue delay" at any time. As a result of the foregoing, Plaintiffs are not entitled to judgment on their claims that Defendant did not properly provide an IEE or file for due process in 2009.

Moreover, this exact issue was considered by the Administrative Law Judge and decided in Defendant's favor. (R. at 13376-85, ¶129-53.) Accordingly, Defendant respectfully requests that the Administrative Law Judge's decision be upheld and that judgment for Defendant be entered on such claims, as requested in Defendant's Amended Motion for Summary Judgment. (Doc. 112.)

### IV. Measurable IEP Goals

In their Motion for Partial Judgment, Plaintiffs cite to the United States Code provision defining "IEP" and then summarily allege that "[t]his [C]ourt's review of AL's January and April 2009 IEPs and June 2010 IEPs will show that the IEPs that JCSB wrote do not met [sic] the standards identified above." Plaintiffs fail to provide any details, record citations, or legal

argument in support of this conclusory statement. Plaintiffs have, accordingly, fallen far short of establishing that they are entitled to judgment on this basis. Moreover, the record evidence makes clear that, contrary to Plaintiff's allegations, A.L.'s January and April, 2009 IEPs and June 2010 IEP each contained all required components. (Doc. 112-1, ¶21.) Plaintiffs, accordingly, are not entitled to judgment on such claims.

Moreover, this exact issue was considered by the Administrative Law Judge and decided in Defendant's favor. (R. at 13359-60, ¶76-78; 13369, ¶105-06; 13428, ¶284-285.) Accordingly, Defendant respectfully requests that the Administrative Law Judge's decision be upheld and that judgment for Defendant be entered on such claims, as requested in Defendant's Amended Motion for Summary Judgment. (Doc. 112.)

### V.     ESY Least Restrictive Environment

In their Motion for Partial Judgment, Plaintiffs claim that Defendant violated the IDEA in its provision of ESY to A.L. in 2009. Plaintiffs again fail to provide any details, record citations, or legal argument in support of their conclusory allegations. Plaintiffs have, accordingly, fallen far short of establishing that they are entitled to judgment on this basis. Moreover, the record evidence makes clear that, contrary to Plaintiff's allegations, Defendant complied with the IDEA in all aspects with regard to its provision of ESY in 2009. (Doc. 112-1, ¶24.) Plaintiffs, accordingly, are not entitled to judgment on such claims.

Moreover, this exact issue was considered by the Administrative Law Judge and decided in Defendant's favor. (R. at 13365, ¶93-95; 13376, ¶126-27; 13385-88, ¶154-64.) Accordingly, Defendant respectfully requests that the Administrative Law Judge's decision be upheld and that judgment for Defendant be entered on such claims, as requested in Defendant's Amended Motion for Summary Judgment. (Doc. 112.)

## VI.     Electronic Transcript

Plaintiffs also contend that the ALJ erred in denying their Motion to Compel Respondents to Provide a Court Reporter for All Hearings (R. at 238-43.) This contention is without merit. 20 U.S.C. § 1415(h) provides, in pertinent part:

> (h) Safeguards
> Any party to a hearing conducted pursuant to subsection (f) or (k), or an appeal conducted pursuant to subsection (g), shall be accorded--
> …
> (3) the right to a written, or, at the option of the parents, electronic verbatim record of such hearing; …

Subsection (f), titled "impartial due process hearing" clearly contemplates its requirements only applying to a final, singular, evidentiary due process hearing. *See* 20 U.S.C. § 1415(f)(1)(A) ("the parents or the local educational agency involved in such complaint shall have an opportunity for **an** impartial due process hearing…")(emphasis added); 20 U.S.C. § 1415(f)(1)(B)(i) ("Prior to the opportunity for **an** impartial due process hearing…")(emphasis added), 20 U.S.C. § 1415(f)(1)(B)(ii) ("**the** due process hearing may occur, and all of the applicable timelines for **a** due process hearing…")(emphasis added).

Similar to the Federal provisions, Rule 6A-6.03311(9)(v)(1), Florida Administrative Code, provides, in pertinent part:

> Any party to a due process hearing has the right:
> …
> d. To obtain written, or, at the option of the parents, electronic verbatim record of **the** hearing at no cost to the parents; …

(emphasis added.) This provision, like its federal counterpart, contemplates the transcript requirement applying only to one single, final hearing. Rule 6A-6.03311(9)(v), Florida Administrative Code, also provides that "[a]n ALJ shall use the provisions of Rules 6A-6.03011 through 6A-6.0361, F.A.C., for conducting due process hearings and shall conduct such hearings

in accordance with the Uniform Rules for Administrative Proceedings, Chapter 28-106, F.A.C."

Rule 28-106.214(1), Florida Administrative Code, titled "Recordation" states:

> Responsibility for preserving the testimony at **final hearings** shall be that of the agency transmitting the petition to the Division of Administrative Hearings pursuant to Sections 120.569 and 120.57, F.S., the agency whose rule is being challenged, or the agency whose action initiated the proceeding. Proceedings shall be recorded by a certified court reporter or by recording instruments.

(emphasis added.) This provision requiring the preservation of testimony only at final hearings is consistent with the language of both 20 U.S.C. 1415(h) and Rule 6A-6.03311(9)(v)(1), Florida Administrative Code. Accordingly, neither the Federal nor Florida IDEA regulations contain any provisions requiring transcripts of preliminary or motion hearings at no cost to the parents. As a result, the ALJ's Order Denying Petitioners' Motion to Compel was proper. (R. at 238-43.) Plaintiffs, accordingly, are not entitled to judgment on such claims. Rather, Defendant respectfully requests that judgment for Defendant be entered on all claims, as requested in Defendant's Amended Motion for Summary Judgment.

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Judgment should be denied. Moreover, Defendant respectfully requests that judgment for Defendant be entered on all claims, as requested in Defendant's Amended Motion for Summary Judgment.

Respectfully submitted this 11th day of September, 2014.

    */s/ Bob L. Harris*
**BOB L. HARRIS**
Florida Bar No. 0460109
bharris@lawfla.com
**JAMES J. DEAN**
Florida Bar No. 0832121
jdean@lawfla.com
**S. DENAY BROWN**
Florida Bar No.: 88571
dbrown@lawfla.com
MESSER CAPARELLO, P.A.
P.O. Box 15579
Tallahassee, FL 32317
Telephone:	(850) 222-0720
Facsimile:	(850) 558-0662
*Counsel for Jackson County School Board*

    */s/ H. Matthew Fuqua*
**H. MATTHEW FUQUA**
Florida Bar No. 0451101
mfuqua@embarqmail.com
BONDURANT & FUQUA, P.A.
4450 Lafayette Street (32446)
Post Office Box 1508
Marianna, Florida 32447
Telephone: 850-526-2263
Facsimile:  850-526-5947

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 11, 2014, I electronically filed the foregoing Motion with the Clerk of the Court for the Northern District of Florida by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

    */s/ Bob L. Harris*
**BOB L. HARRIS**